RIVERA, PLAINTIFF AND APPELLANT, *v.* MARTÍNEZ, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Aguadilla in an Action for Damages for Libel.

No. 1778.—Decided December 6, 1918.

LIBEL—DAMAGES.—It is a well settled rule that when damages are claimed by reason of the fault or negligence of another person it is necessary to allege and prove that real and positive damages were caused.

ID.—ID.—Words may be libelous *per quod* or *per se*. The distinction is based on a rule of evidence. When damages are claimed for words libelous *per quod* the general rule is applicable; but when the action is based on words libelous *per se* the damages need not be specified or proved, because it is presumed that they are the necessary consequence thereof.

The facts are stated in the opinion.

*Messrs. José C. Rivera* and *Luis Llorens Torres* for the appellant.

*Messrs. Víctor P. Martínez* and *Leopoldo Feliu* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

José C. Rivera brought an action against Víctor P. Martínez in the District Court of Aguadilla for $20,000 damages, alleging that certain false and defamatory publications had injured his reputation and good name to that extent. The defendant demurred and answered, denying the material allegations of the complaint. He also pleaded "new matter of opposition to the complaint" and set up a counterclaim for $30,000 damages for malicious prosecution. The demur-

rer was overruled, the case was brought to trial and the court rendered judgment sustaining the complaint, dismissing the countercomplaint and adjudging that the defendant pay to the plaintiff the sum of one dollar as damages, one dollar as attorney fees and the costs. The appeal now under consideration was taken by the plaintiff whose brief limits the appeal to the question of the amount of damages.

The plaintiff alleged in his complaint that he was the judge of the Municipal Court of San Sebastián; that, knowing that the plaintiff held the said position and with the malicious intent to injure him and deprive him of the confidence and good name which he enjoyed among the residents of the said town and throughout Porto Rico, the defendant wrote and published a letter about January 28, 1916, addressed to Luis Muñoz Rivera at Washington, U. S. A., containing the following language which referred to the plaintiff:

"Charges against José C. Rivera, municipal judge of San Sebastián, appointed at the request and on the recommendation of his kinsman, Luis Llorens, editor of *Juan Bobo* of San Juan, P. R.

"1. He is not qualified for the position because he is unlearned in the laws of Porto Rico and because he has not been a resident for the two years required by law. This is proved by the judgments rendered by him and recorded in the clerk's office of said court.

"2. Because of immoral conduct, for he drinks to excess, rides bareheaded in automobiles and sells his judgments for invitations to drinking revels and personal favors.

"3. Because of dissolute conduct with women of ill fame, attending dances given by them in the wards of Pepinito and Guayabal.

"4. Because of drunkenness and public scandal in clubs and on the streets to the extent that on one of these occasions he lost an artificial tooth.

"5. Because of dissipated and unbridled conduct, for a few days ago at a drunken carousal with Cecilio A. Echeandía, alias Chilín, Cardé, Méndez and others, as they finished eating they smashed the plates and Chilín, having eaten, broke his plate on the dish of rice and chicken, whereupon José C. Rivera arose and said that he would not allow that as he was the judge, Chilín replying: 'There is no

judge here; there are only indecent drunkards here and of them you are the chief.'

"6. Because of a breach of the peace committed at a dance in the house of Tito Nieves when José C. Rivera got drunk and created a disturbance and the owner of the house, Tito, put him out of the house, whereupon, in order to revenge himself, José C. Rivera sent the police to stop the dance, but the police did not stop it because they were convinced that José C. Rivera was the only one who had committed a breach of the peace.

"7. Because he allows all kinds of prohibited games in clubs and other places on condition that he should not be charged for his drinks, and the police had to dress as civilians so as not to surprise the gaming.

"8. Because he violates young girls, for he bought the daughter of Pedro José and ravished her.

"9. Because he conceals crimes, for on November 22 of last year he and others went to the house of one Rottari in the ward of Piedras Blancas, where there were all kinds of drinks, eatables and prohibited games * * * and a short time later the house, which was insured for $1,000, was burned and the amount of the policy was collected without any difficulty, as may be seen from the newspaper called *Regional,* No. 132, of November 22, 1915.

"10. Another carousal, at which prohibited games were played with the consent of said José C. Rivera, took place at the house of Martín Santoni, the leader of the ward of Hoya Mala, as may be seen from the said *Regional.*

"11. Another carousal, with prohibited gaming sanctioned by Rivera, was given at the house of Herminio Méndez, ward of Pozas.

"12. Another took place at the house of Paco Roig, ward of Perchas, at which prohibited gaming was indulged in with the consent of Rivera.

"Such are the charges against José C. Rivera, municipal judge of San Sebastián, which we submit to your distinguished consideration so that you may order an investigation and secure the removal of the said judge in the interests of justice and of the people of Porto Rico.''

The plaintiff further alleged that on or about February 21, 1916, the defendant wrote and published a letter addressed to Miguel de Jesús, postmaster, San Sebastián, P. R. containing some verses referring to certain of the acts imputed to

the plaintiff in the letter addressed to Muñoz Rivera. The verses are copied literally in the complaint.

The plaintiff maintained that the expressions contained in both letters were false and defamatory.

At the trial the defendant made no attempt whatever to prove the truth of the charges, but only denied that he was the author of the letters. In reviewing the evidence the trial court said:

"After carefully considering the evidence introduced and the law and jurisprudence applicable to the questions involved in this action, the court is convinced beyond all reasonable doubt that the defendant is the author of the two anonymous letters copied into the complaint, or that he knowingly and maliciously published them with the object of defaming the plaintiff, José C. Rivera, municipal judge of San Sebastián; that the said anonymous communications are not of a privileged character and are libelous *per se*. Sections 2, 4, 5, and 8 of the act relating to libel and slander of February 19, 1902."

Although it arrived at the foregoing conclusions, the court was of the opinion that the plaintiff had failed to produce any evidence of the essential elements which aggravate the injury caused, such as depreciation of professional reputation, loss of employment or of property, etc., and consequently gave judgment against the defendant for the sum of only one dollar as damages.

The plaintiff-appellant alleged that the district court erred (1) in holding that a libel *per se* causes only nominal damages, and (2) in holding that the plaintiff had not proved special damages.

1. Let us examine the first error. The right of a person to claim pecuniary compensation for damages caused by the fault or negligence of another has always been recognized. *"Emendar et pechar debe el daño aquel que lo fizo al que lo recibió: et esto le puede seer demandado, quier que lo hobiese fecho por sus manos, ó aviniese por su culpa, ó fuese fecho por su mandado ó por su consejo,   *   *   * "* was the expressive language of Alfonso the Wise in Law 3, Title 15, *Partida*

7, and, following the Spanish legislator, the Porto Rican Legislature provided in section 1803 of the Revised Civil Code that "A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done." For a fuller treatment of this subject see the case of *Díaz* v. *San Juan L. & T. Co.* 17 P. R. R. 64.

It is also the universal rule in both Spanish and American jurisprudence that although the right to sue exists in such a case, the actual existence of the damages caused must be pleaded and proved in order that the action may prosper in a court of justice.

Now, the action brought by the plaintiff in this case is based on a special act of American origin entitled "An Act Authorizing Civil Actions To Recover Damages for Libel and Slander," passed by the Legislative Assembly of Porto Rico and approved on February 19, 1902 (Comp. 1911, secs. 1684 *et seq.*), and it has been settled by American jurisprudence that there is an exception in cases of this kind, not as to essentials, but as to the matter of evidence.

In Jaggard on Torts, Vol. I, p. 486, it is said:

"Mr. Townshend has demonstrated that history is silent as to the introduction of the action for defamation. Accordingly, he applies hypothesis as a means of investigation as to the manner in which the law protects reputation, and concludes that pecuniary loss is the gist of the action. He regards the rule of law that certain language is, *per se,* and without other evidence, conclusive proof of pecuniary loss, as only a rule of evidence, while the rule of right remains intact, that a pecuniary loss must be shown to entitle to a remedy.

"To apply this distinction between a rule of evidence and a rule of right to the entire law of torts would, however, be revolutionary. There is no reason why the general law should be further filled with exceptions. The distinction also ignores the important proposition that where damages are presumed by the law from the invasion of a right (whether called natural, simple, absolute, or by other name), no inquiry is allowed into the character of the actual harm suffered. Then, there is no requirement that such actual harm be sufficient

in quantity, temporal in character, or proximate in sequence, so far as mere right to recover (but not extent of recovery) is concerned. This distinction, accordingly, would seem to be untrue or misleading. The fact is that here the law is eminently artificial. It has held that certain classes of words in slander and a different class of words in libel are actionable *per se;* that is, invade a simple (or absolute) right of reputation. Upon proof of publication of such words, or absence of any defense, the plaintiff must recover at least nominal damages. The law has further held that where words are not within these classes (*i. e.* slanderous or libelous *per se*), then they are actionable only on proof of publication of words not *per se* defamatory, even in the absence of any defense, the plaintiff cannot recover, unless he shows that he suffered harm which conforms to the standard fixed by the general rules.''

The case of *Quiñones* v. *J. T. Silva Banking and Commercial Co.* 16 P. R. R. 661, although involving a distinctive feature in that the libelous communication was conceded to be privileged according to the said act, shows that some years ago this court held that ''when the writing is defamatory *per se* and there is no privilege in favor of the defendant, this is sufficient to entitle him to recover at least nominal damages without proving the same in any specific manner.''

It seems to us opportune to cite also the jurisprudence of Louisiana, for in that state the jurisprudence, based on a fundamental law like our old law, apparently goes still further. See Jaggard on Torts, Vol. I, p. 487.

''Louisiana, freed from many of the fetters of the common law, and deriving its inspiration largely from the civil law, well illustrates the natural rule as to defamation of persons. It is provided by its Code that 'every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.' 'The courts of that state are not bound,' said Fenner, J., in *Spotorno* v. *Fourichon,* 'by the technical distinctions of the common law as to words actionable *per se* and not actionable *per se,* and allowing for the latter only actually pecuniary damages specially proved.' If the charges are false, injurious, and made maliciously or *mala animo,* they combine all the elements essential to support the action. Both

damages and injury and the malice may be inferred from the nature and falsity of the words, and from the circumstances under which they were uttered, without the necessity of special proof. \* \* \* ''

And, finally, we reproduce a clear summary of the law on the subject from page 264 of Volume 17, Ruling Case Law, as follows:

"IMPUTATION ACTIONABLE PER SE OR PER QUOD.—Words may be actionable in themselves or *per se,* or they may be actionable only on allegation and proof of special damage or *per quod:* The distinction is based on a rule of evidence. Words of both classes are actionable on the same grounds and for the same reasons. The noxious quality in both lies in the fact that they are the natural and proximate causes of pecuniary damage to those concerning whom they are maliciously uttered. The difference between them is in · the matter of proof of the resulting injury. In the case of words actionable *per se* their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of it. They necessarily import damage, and therefore in such cases general damages need not be pleaded or proved but are conclusively presumed to result, and special damage need not be shown to sustain the action.''

If we pause just a moment in the examination of the facts of this particular case we shall find that the ''rule of evidence'' accepted by the American courts is fully justified. The charges made by the defendant against the plaintiff are so tremendously injurious that to conclude that their publication would not cause damage would display ignorance of human nature.

The theory of the lower court is not clear. It appears that it followed the jurisprudence and only awarded the plaintiff one dollar as nominal damages. But this case calls for something more.

The libel was repeated, revealing the persistent attitude of the defendant. If the defendant had proved at the trial even one of the charges, perhaps he might have appeared to the mind of the judge as a citizen who, indignant at the wrong

or criminal acts of an official, was, carried further by his in-
dignation than was warranted. No such figure arises here,
but only that of a defendant who, after making the most as-
tounding charges in anonymous letters against the plaintiff,
simply pleads that he did not make them when given full op-
portunity to prove that such charges were true. The logical
consequence of such an attitude should be a greater penalty
than that imposed upon the defendant by the judgment ap-
pealed from.

2. But this is not all. Analyzing the second error as-
signed, we are forced to the conclusion that there was evi-
dence of acts from which it may be deduced that the reputa-
tion of the plaintiff was affected and that he suffered by
reason of the defendant's action. On pages 37 and 38 of the
transcript of the record witness Andrés Méndez Liciaga
testified under oath as follows:

"That they learned of these Exhibits and that other members of
the club who were present read them; that they had a long conver-
sation about them in connection with the charges made against Judge
Rivera, and of course the natural censure was directed against Judge
José C. Rivera to such an extent that witness had to step in and
defend the conduct observed by Judge Rivera; that the verses of
Exhibit No. 9 were also spoken of and similarly commented on there,
and that as a result of such verses and charges a resolution was
adopted against the judge to the effect that the Unionist Committee
did not unanimously approve of his application for the office of mu-
nicipal judge of San Sebastián until the charges made against him
in the said Exhibits had been inquired into; that the witness was in
a position to testify as to this point because he is an enthusiastic poli-
tician and receives due attention and consideration from his party
at that place, and that he recalls that this took place in 1916 at the
time of the Unionist conventions."

In view of all the foregoing we are of the opinion that
the appeal taken by the plaintiff should be sustained and the
judgment accordingly modified in the sense that the defendant

be adjudged thereby to pay to the plaintiff the sum of $3,000, the attorney fees and the costs of the action.

*Modified and affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.